Jogger Manufacturing Corporation, Plaintiff-Appellee, v. Addressograph-Multigraph Corporation, and J. L. Ricks, Defendants-Appellants.

Gen. No. 45,467.

Opinion filed January 30, 1952. Rehearing denied February 15, 1952. Released for publication April 2, 1952.

WOODS, AITKEN & AITKEN, Lincoln, Nebraska, and DAILY, DINES, ROSS & O'KEEFE, of Chicago, for appellants; PHILIP M. AITKEN, of Lincoln, Nebraska, and ROBERT MCCLORY, of Chicago, of counsel.

ADAMS, MOSES, & CULVER, and HOWARD D. MOSES, all of Chicago, for appellee; WILLIAM C. WINES, of Chicago, of counsel.

MR. PRESIDING JUSTICE KILEY delivered the opinion of the court.

This is an action which was begun in law and later changed to a suit in equity for reformation of a written agreement, for an accounting, and for money judgments. The original suit at law and plaintiff's first amended complaint were stricken on defendants' motions. The issues made under the second amended complaint were referred to a master in chancery. The chancellor entered a decree in plaintiff's favor upon the recommendation of the master as modified. Defendants have appealed.

Plaintiff is an Illinois corporation, and the corporate defendant, successor of the American Multigraph Company and the Addressograph Company, is licensed to do business in Illinois. Plaintiff is the owner of patent rights covering mechanical joggers which are attached to, and used to stack printed material as it comes from, printing presses. Defendant is a manufacturer and seller of office equipment including printing and multigraphing machines.

On August 10, 1931 plaintiff's assignor and defendant Addressograph-Multigraph's (hereinafter called Multigraph) predecessor, for themselves and successors, etc., made a licensing agreement. We shall refer to the plaintiff and Multigraph as though they were the original contracting parties. Plaintiff, as owner of patents, gave Multigraph an exclusive li-

3

cense to manufacture and sell joggers under the patents. The consideration paid plaintiff was $9,250. In 1936 plaintiff complained that Multigraph was violating the terms of the license. In 1939 plaintiff sued Roquemore, then Multigraph's Chicago sales agent, for patent infringement in the United States District Court. Plaintiff prevailed in the district court, but the United States Court of Appeals reversed the judgment. *Jogger Manufacturing Corporation v. Roquemore,* 118 F. (2d) 867. Certiorari was denied by the United States Supreme Court. The instant suit was begun in August 1943, changed to a chancery suit for reformation in August 1945 and in August 1946 the second amended complaint was filed. A decree was entered January 15, 1951.

The pertinent issues made by pleadings which were referred to the master were whether the contract of August 10, 1931, as construed by the Court of Appeals in the *Roquemore* case, expressed the true intention of the parties: if not, whether the result was due to mutual mistake or, in the alternative, mistake of plaintiff and fraud of Multigraph, or a mistake of law by plaintiff; whether Multigraph and Ricks conspired to defraud plaintiff under the licensing agreement; and whether plaintiff was guilty of laches. Plaintiff prayed for reformation, for an accounting, for a judgment of $250,000 special damages, a judgment of $260,000 for malicious and intentional fraud, and a judgment of $500,000 for damages arising from the alleged conspiracies.

Though the plaintiff alleged mutual mistake, and in the alternative mistake on its part and fraud on the part of defendant, the charge of fraud was removed from the case. It was agreed at the trial that there could be no mutual mistake of fact where there was fraud by one party. *Midwest Tea Packing Company v. Currier-Lee Warehouses, Inc.,* 338 Ill. App.

4

663. Plaintiff's attorney stated that plaintiff was relying on the mutual mistake theory. The chancellor stated he was basing reformation on mutual mistake.

On the reformation issue, the question was what the parties intended by the written contract of August 10, 1931. Oral negotiations preceding the drafting of the instrument were broken off by Multigraph in June 1931 and reopened by plaintiff in July. Following the final conference, plaintiff on July 25 submitted a written contract, prepared by its attorneys, to Multigraph. The terms of this proposal would have given Multigraph "the right to manufacture, use and sell jogger models known as No. 112 and No. 1121 and built expressly for attachment to the Nos. 66 and 86 multigraphs, and for use in the office appliance field only." Should it manufacture other "type" presses for use in that field, Multigraph would have the right to manufacture, etc. "Models No. 112 and No. 1121 for said presses" but under no condition "to manufacture joggers for M-24 and Multicolor type presses." Multigraph rejected this proposal, revised it and submitted it to plaintiff. This revised proposal was accepted by plaintiff and is the contract of August 10, 1931.

In the preamble as well as in the body of the contract, wherever plaintiff's original proposal would have limited "joggers known as Models No. 112 and 1121" to Multigraph's presses numbers 66 and 86, the contract eliminates this restriction and provides that those joggers may be attached "to the products from time to time manufactured and sold by Multigraph." It provided expressly that "Multigraph shall have no right to manufacture said joggers for M-24 and Multicolor type presses."

The Court of Appeals in the *Roquemore* case, 118 F. (2d) 867 decided that Roquemore did not infringe plaintiff's patents by selling joggers made by Multigraph for attachment to presses other than numbers

5

66 and 86. The court indicated no alternative to its construction of the contract to give Multigraph the right to manufacture joggers with frames of different sizes than those on "models known as No. 112 and No. 1121." It decided, however, that Multigraph was restricted to the office appliance field and to presses other than M–24 and multicolor in that field.

The master's findings and recommendations and the decree are based on plaintiff's theory that this meaning given to the words used is not the true understanding of the parties at the time of the meeting of the minds when the negotiations ended. The decree reformed the contract by inserting the word "sizes," and terms and phrases containing that word, into the contract wherever it was deemed necessary to limit the license to joggers having the same size frames as models numbered 112 and 1121.

The questions are whether the decree is erroneous because of the lack of ground, or sufficiency of proof of cause, for reformation, and whether plaintiff's lack of diligence in prosecuting its claim precludes it from seeking the aid of equity.

It is plain from plaintiff's pleading and its testimony that it relied on the words used as expressing the intention of the parties. There is no claim that the words used were not the ones intended. In fact, plaintiff's president testified that at the time of the trial he thought the words still meant what they meant the day the contract was made. He also testified he thought Multigraph's proposal when he signed it meant the same as plaintiff's proposal did before Multigraph revised it.

This is not a case of failure to describe or identify property to be conveyed as in *Carter v. Barnes,* 26 Ill. 455, and *Krabbenhoft v. Gossau,* 337 Ill. 396. The dictum relied on in the *Carter* case is not pertinent. Multigraph did not omit any portion or insert any part

6

not included in the agreement so as to render it variant from what was intended. In the *Krabbenhoft* case, the property described was not owned by the vendor and the deed was reformed to describe the property he did own. Furthermore, there had been no previous construction by a court contrary to that contended for by the plaintiff there. In the instant case, the parties deliberately and intentionally used words to express the meeting of the minds and to describe the property subject to the license. The court in the *Roquemore* decision did not find the technical terms meaningless, and the parties operated under those words without difficulty for five years.

██ The parties reached an understanding on the scope of the license at the terminal conference in Cleveland. Plaintiff thereupon expressed what it considered to be the agreement. Multigraph rejected this expression and modified it in a counterproposal, read by plaintiff's president and signed by him as the acceptance of the plaintiff. It is presumed that the agreement expresses the mutual intention of the parties and proof to overcome the presumption must amount to a certainty. *Christ v. Rake,* 287 Ill. 619. Plaintiff, by accepting Multigraph's counterproposal, construed it to mean the same as the earlier oral understanding. *Wortham v. Quait,* 215 Ill. App. 444.

██ The parties chose the words used in the contract. Contracting parties, if prudent, foresee that there may be a judicial construction of the words used to determine their meaning. We must assume that when plaintiff's president signed the contract, he construed the words to mean what the United States Court of Appeals later decided that the words meant. Plaintiff cannot now claim that there is a question of fact to be decided whether what the contract means is what the parties intended. There is no question of fact, nor is there a mutual mistake of fact. There was a mistake

on plaintiff's part in giving the wrong legal effect to the words used, a mistake of law which affords no ground for reformation of the contract. *Ambarann Corporation v. Old Ben Coal Company,* 395 Ill. 154; *Hardy v. Greathouse,* 406 Ill. 465. Our conclusion on this point is that the decree is erroneous because, taking the plaintiff's testimony as true, no ground has been shown for reforming the contract of August 10, 1931.

■■ The decree is erroneous also in finding that plaintiff was not guilty of laches. Plaintiff is charged as of August 10, 1931 with the knowledge it claims to have received for the first time in 1941 when the United States Court of Appeals decided the *Roquemore* case. *Dustin v. Brown,* 297 Ill. 499. The plaintiff did not complain of Multigraph's manufacturing joggers in accordance with the latter's interpretation of the license agreement until 1936. Plaintiff took no legal action until its infringement suit in 1939 against *Roquemore.* The parties there were not the same, nor were the issues (*Wilcoxon v. Wilcoxon,* 199 Ill. 244), but we shall assume for this purpose that plaintiff should be credited with having acted in 1939 as it affects the question of laches. Nevertheless, between 1931 and 1936, Multigraph manufactured joggers with frames differing in size from the models 112 and 1121 without complaint from the plaintiff, and Multigraph thereafter continued manufacturing in the face of plaintiff's protest without any legal action on plaintiff's part until 1939. During this time, it would appear from plaintiff's pleading, substantial potential damages against Multigraph were accruing. This is aside from the disadvantage accruing to Multigraph through potenial loss of good will from its enforced stoppage of the manufacture of joggers in varying frame sizes for use with its products from time to time manufactured.

■ The defendant Ricks was joined in the count charging conspiracy. The master's recommendation

8

that the complaint be dismissed as to Ricks was not followed in the decree, and the defendant claims error. Our conclusion on the merits renders it unnecessary for us to consider this point since that conclusion disposes of the case against all defendants.

▉ Another point raised by defendants on appeal is that the court erred in assessing against defendants the master's fee and in fixing the fee at $3,177.60. Since the decree is to be reversed and a decree entered dismissing plaintiff's complaint for want of equity, the costs will be taxed against plaintiff. This obviates the necessity of our passing on this point.

For the reasons given the decree is reversed and the cause remanded with directions to the chancellor to enter a decree dismissing plaintiff's complaint for want of equity.

*Decree reversed and the cause remanded with directions.*

LEWE and FEINBERG, JJ., concur.