Carroll E. Swan and Christine P. Swan, Plaintiffs-Appellees, v. Allstate Insurance Company, a Corporation, Defendant-Appellant.

Gen. No. 51,970.

First District, First Division.

November 27, 1967.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John J. Moelmann, Karl M. Tippet, and John J. Kirkland, of counsel), for appellant.

Erwin M. Pearl, of Chicago, for appellees.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

After a nonjury trial, the court ordered the reformation of an automobile insurance policy issued by defendant, so as to include in plaintiffs' coverage "bodily injury benefit insurance," also known as "Uninsured Motorist Coverage." Defendant Allstate appeals on the theory that plaintiffs "totally failed to prove any mutual mistake of fact by any evidence."

The policy in question was issued by Allstate to plaintiff Carroll E. Swan for the period from September 11, 1962, to September 11, 1963. On July 27, 1963, plaintiffs were involved in an automobile collision with an alleged uninsured motorist. Plaintiff Swan called Allstate to make a claim and was told that he did not have uninsured motorist coverage.

The complaint alleges that the policy was issued on September 11, 1962, and "plaintiffs were informed by the defendant, through its agents and servants, that he and his insured relatives were insured for injuries incurred in a collision with an uninsured automobile up to $10,000.00 for one person and $20,000.00 for more than one person. That plaintiff had such coverage in policies previously issued to him by defendant, requested the same coverage when the policy Exhibit 'A' was ordered and was assured by the agent and servant of defendant that such policy would be issued containing such coverage. That when plaintiff received the policy Exhibit 'A' he observed that such coverage was provided for in the policy and thereafter operated his automobile believing that he had such coverage."

In its answer, defendant admits the issuance of the policy but denies that the policy contained "Uninsured Motorist Coverage" and further "denies that the plaintiffs were informed by the defendant, through its agents and servants, that the plaintiff and his insured relatives were insured for injuries incurred in a collision with an uninsured automobile . . . ."

Defendant also admits in answers to interrogatories that previous to the ordering of the instant policy, plaintiffs were insured by defendant from May 30, 1960, to June 30, 1961, and that the policy included uninsured motorist coverage. The interrogatory answers further show that defendant had a record of the contents of the 1960 policy, and that when plaintiff executed the "Request for Service" form (an application form) on September 11, 1962, an employee of defendant examined its records "as to any automobile insurance policies previously in effect with defendant on said plaintiff's automobiles," but that prior to or after the issuance of the instant policy, no one on behalf of defendant informed plaintiff Swan that he did not have uninsured motorist coverage under the instant policy.

At the trial, plaintiff testified that on September 11, 1962, he applied for insurance at an Allstate desk in a shopping center and talked with a "Mr. Hilgenberg." "I told him I wanted insurance on my automobile, and I told him I had insurance with Allstate previous, and I wanted him to check back and give me the same thing, that I had complete coverage including uninsured automobile coverage." Hilgenberg replied, "You will be taken care of. You will be completely covered," and proceeded to fill out the form. "He put all the writing on the form, putting in the information that I gave in response to the questions. . . . I got the policy through the mail a week or two later. . . . I looked at the premium and I looked through the policy booklet and seen the rider attached with the Non-insured automobile coverage. I just assumed that I had it, and I paid the premium. When I say the rider with the Non-insured motorist coverage I am referring to the amendatory endorsement which speaks of uninsured automobiles. I looked at it and thought I had the coverage because it was countersigned by the agent, Hilgenberg."

Defendant's witness, John D. Hilgenberg, an insurance agent for Allstate Insurance Company for a number of years, testified that the "Request for Service" was in his handwriting, and the document did not refresh his memory as to any conversation he had at that time. He followed a routine practice in filling out the application made in triplicate—"One goes to our Skokie underwriting office. Two, is the insured's copy, and three is our audit copy. We would receipt at the bottom of the application any money that the transaction would bring about. We would tear the second copy out. Here again, it would be turned around, placed on the counter, and each individual coverage is gone over, with the total annual premium for the coverage at the bottom of the application. . . . In taking applications over the counter in 1962, I did not vary from the customer practice that I just described. The customer gets a copy of this application. I go over each coverage with him. In September, 1962, uninsured motorist coverage was offered to the public by Allstate. It was offered to anyone who wanted to apply it in the liability and property damage. Plaintiffs' Exhibit 5 [the application] truly and correctly demonstrates the coverage applied for by Mr. Swan."

On cross-examination, Hilgenberg stated he did not remember plaintiff Swan, and that "we would have had to ask Mr. Swan what kind of coverage he wants. I don't know whether I asked Mr. Swan what type of coverage he wanted. Plaintiffs' Exhibit 5 has a list of all the coverages. There is no place on Plaintiffs' Exhibit 5 where the words 'uninsured motorist coverage' are printed. The words 'uninsured motorist coverage' do not appear on this form. The average person would not know if he had uninsured motorist coverage the way it is worded. He would have to ask me to explain it. I don't remember whether I explained it to Mr. Swan. I don't remember if I called the Allstate office and asked for any information on his history."

Defendant contends that before a written agreement can be reformed, there must be a mutual mistake of fact based upon clear and convincing evidence. Defendant cites Christ v. Rake, 287 Ill 619, 122 NE 854 (1919), where it is said (p 622):

> "Where contracting parties have reduced their agreement to writing it is presumed to express their mutual intention, and that presumption does not yield to any claim of a different intention unless the evidence of a mutual mistake is of a strong and convincing character. A written instrument will not be reformed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty."

Defendant also cites Hyman-Michaels Co. v. Massachusetts Bonding & Insurance Co., 9 Ill App2d 13, 132 NE2d 347 (1956), where the court said (p 20):

> "In analyzing the evidence we have in mind that in a suit to reform a written contract, a plaintiff is not merely seeking to rescind or avoid the contract but is seeking to enforce a contract different from that which he has signed. He must therefore be able to point to the contract he intended to make. Moreover, he must prove a like intention on the part of the defendant. In other words, both defendant and plaintiff must have had the intention to make the same contract, but failed to do so by each making the same mistake."

And at page 26:

"In cases where reformation has been allowed there has been a clear showing of what the plaintiff intended to procure and of the defendant's knowledge of that intention, either by express directions from the insured or by knowledge of circumstances wholly inconsistent with the provisions of the policy."

Defendant argues that there is no showing of a mistake on the part of Allstate, and there is no evidence whatever that Hilgenberg was under a misapprehension as to what coverage was being purchased, and he followed his usual custom in filling out the application. Defendant asserts that plaintiff was the only person mistaken, and no premium was paid for the uninsured motorist coverage, and by accepting the policy plaintiff became bound by its terms and cannot plead ignorance of its contents. Defendant notes that plaintiffs had possession of the policy for ten months before they discovered that they did not have uninsured motorist coverage, during which period of time plaintiff Swan came into the store and cancelled coverage on one of the two cars covered by the policy. In support, defendant cites Pollock v. Connecticut Fire Ins. Co., 362 Ill 313, 199 NE 816 (1936), where the court said (p 320):

"Unless he has been misled by some act of the insurer, it is generally held that a person who accepts and retains the possession of an insurance policy is bound to know its contents."

Plaintiffs contend, "Where through the mistake of an authorized agent of the insurance company an insurance policy fails to include coverage bargained for by the insured, a Court of Chancery has the power and duty to order reformation of the policy." Plaintiffs argue that the evidence is uncontradicted that plaintiff requested Hilgenberg to have the policy include "uninsured motorist

210

coverage," and to check previous policies issued to plaintiff which had that coverage. Plaintiffs assert that Hilgenberg neglected to check back as requested, and defendant's employee who examined the file for previous policies also neglected to inform Hilgenberg or plaintiff that the policy contained that coverage and, therefore, defendant is estopped to deny the coverage.

Plaintiffs' authorities include Beddow v. Hicks, 303 Ill App 247, 25 NE2d 93 (1940), where the court said (p 257):

> "Where an agent is authorized to act, and through his mistake or fraud, the policy fails to express the real contract between the parties, or, if by inadvertence, negligence or mistake of the agent, provisions other than those intended are inserted, or stipulated provisions are omitted, there is no doubt as to the power of the court of equity to grant relief by reformation of the contract."

Plaintiffs also contend that "parol evidence is admissible to show the real intention of the parties when the original written contract does not accurately express the intention of the parties. Uncontroverted testimony of plaintiff indicates he did not receive the coverage for which he bargained." On this point, plaintiffs' authorities include Brosam v. Employer's Mut. Cas. Co., 61 Ill App2d 183, 209 NE2d 350 (1965), where the court said (p 189):

> "There is no doubt that parol evidence is admissible to show the real agreement between parties when a mistake has been made in the written contract and the evidence is for the purpose of making the contract conform to the original intent of the parties."

Plaintiffs also argue that "where a person accepts and retains an insurance policy he is not bound by its terms

in a case where reformation of the policy is proper." Cited in support is Stoltz v. National Indemnity Co., 345 Ill App 495, 104 NE2d 320 (1952), where the court said (p 501) :

> "Defendant further contends that a person who accepts and retains possession of an insurance policy is bound to know its contents and cites in support thereof the cases of Pollock v. Connecticut Fire Ins. Co., 362 Ill 313; and Capps v. National Union Fire Ins. Co., 318 Ill 350. In each instance the cases cited by defendant were actions at law on a policy to collect for a loss sustained and involved the construction of the insurance policy. This rule does not apply to an equitable proceeding for reformation and the insured's mistake in failing to discover the terms of the policy is not negligence as a matter of law."

See, also, Hyman-Michaels Co. v. Massachusetts Bonding & Insurance Co., 9 Ill App2d 13, 132 NE2d 347, where the court said (p 24) :

> "It is true that courts . . . have held that failure to read a policy does not bar a suit to reform."

After examining this record in the light of the foregoing authorities, we believe plaintiff Swan's testimony reflects a clear showing of what the plaintiff intended to procure and of defendant's knowledge of that intention, manifested by the express directions of the insured. It is admitted that agent Hilgenberg was authorized by defendant to prepare and accept plaintiff's application for automobile insurance. In the absence of his recollection of his conversation with plaintiff in connection with the preparation of the application, plaintiff's testimony that he stated he wanted "complete coverage including uninsured motorist coverage," and Hilgenberg's reply,

"You will be taken care of. You will be completely covered," stands unrefuted. In corroboration of plaintiff's testimony, it is admitted that plaintiff had a previous policy issued to him by defendant, which did include "Uninsured Motorist Coverage."

We also note that at the conclusion of the evidence, and in announcing his finding, the trial judge said: "The testimony by the Plaintiff is that he told the agent he wanted the same coverage that he had before. The agent didn't refute it. He says, 'I don't remember what the conversation was.' He had a right to believe that he would get the same coverage. Consequently, the finding is for the Plaintiff."

 We believe this case comes within the rule that "a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court, unless the findings are manifestly against the weight of the evidence. Where a cause is heard by a chancellor without a jury, his conclusions on facts are entitled to the same weight as a jury verdict." (Brown v. Zimmerman, 18 Ill2d 94, 102, 163 NE2d 518 (1959).) As we cannot say, as we must in order to reverse this order of reformation, that an opposite conclusion is clearly evident, the order of the trial court is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.