319 SOUTH LA SALLE CORPORATION *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.* JULIUS LOPIN *et al.*, Defendants-Appellants—(GENERAL PARKING CORPORATION *et al.*, Defendants-Cross-Appellees.)

(No. 58144;

First District (3rd Division)—April 18, 1974.

Hoffman and Davis and Howard C. Goode, both of Chicago (Maurice L. Davis, of counsel), for appellants.

Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago (John B. Angelo and William D. Serritella, of counsel), for appellees.

Rusnak, Deutsch and Gilbert, of Chicago (Richard H. Deutsch and Gerald D. Chiss, of counsel) for cross-appellees.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff lessee and its officers and shareholders brought suit in the circuit court of Cook County against defendant lessors for reformation of a lease. On July 31, 1972, the trial court, after a trial without a jury, entered an order against the original lessors directing that the lease be reformed by the deletion of paragraph 21(e). The original lessors appeal from that order. At the same time, the trial court denied reformation of the lease as to the original lessors' purchaser, General Parking Corporation, and plaintiff lessees have filed a cross-appeal from that portion of the order.

Plaintiffs John Daros and Hugh Gillespie were the sole shareholders and officers of lessee. Defendants Julius Lopin and Henry Mann were

beneficiaries of a certain trust and were authorized to direct the original lessors' actions. Gordon Prussian was president of General Parking, which purchased the property from the original lessors.

In May 1968 plaintiffs leased all the restaurant and tavern facilities in the Atlantic Hotel located in downtown Chicago. The lease was for 10 years at a total rental of $420,000, payable in equal installments at $3,500 per month. Plaintiffs also agreed to expend a minimum of $100,000 in remodeling and refurbishing the facilities during the first year of the lease.

Plaintiffs' amended complaint in pertinent part charged as follows: that, during lease negotiations, Daros on behalf of plaintiffs refused to execute a lease because it contained paragraph 21(e) permitting lessors to terminate the lease on 90 days' notice if lessors decided to sell or demolish the building; that defendants Lopin and Mann agreed to delete paragraph 21(e) from the lease and that plaintiffs relied on these misrepresentations; that by mutual mistake of Daros, Gillespie, Lopin and Mann, or by the mistake of said plaintiffs and by the fraud of said lessors, paragraph 21(e) was not deleted from the lease, and the lease therefore did not embody the parties' agreement; that in December 1969 lessors sold the property to General Parking; and that on December 42, 1969, General Parking wrongfully terminated the lease. (The amended complaint also sought to reform the lease by deletion of paragraph 6. The trial court in its order did not delete paragraph 6, and plaintiffs apparently have abandoned that request.)

Defendants' answer denied mutual mistake, denied fraud and concealment, and stated that the lease as executed contained the intent and actual agreement of the parties. The answer also contained certain affirmative defenses: that plaintiffs had affirmed the existing lease through an amendment of September 4, 1968; that in three separate judicial proceedings plaintiffs asserted their rights under the lease as executed; that plaintiffs were barred by laches; and that since plaintiffs were in default in the payment of rent, they were legally barred from seeking relief against defendants.

At trial the following pertinent evidence was adduced. Plaintiffs Daros and Gillespie testified that in May 1968 they had a conference with defendants Lopin and Mann regarding the proposed lease. The plaintiffs were represented by attorney Andrew Cardaras, while defendants were represented by attorney Howard C. Goode. When Cardaras informed plaintiffs that the lease contained a 90-day cancellation clause in the event of sale or demolition, Daros, an experienced restaurant owner, refused to execute the lease. After discussion Lopin and Mann agreed to remove the clause, paragraph 21(e). The two plaintiffs further testified

that Goode said he would draft another lease and bring it to Cardaras. On the following Saturday, May 11, 1968, Daros and Gillespie went to Cardaras' office and signed the lease, Plaintiffs' Exhibit 2. After the signing, Daros stated that he never saw the lease again until the notice of eviction was served in December 1969. It was then that he first learned that paragraph 21(e), the cancellation clause, had not been deleted from the lease.

Andrew Cardaras, the lawyer representing plaintiffs in May 1968, testified that after Daros refused to sign a lease containing a cancellation clause, defendant Mann said that he would not sign a lease without such a clause. Mann then suggested that the clause remain in the lease, but that he would give plaintiffs a letter that in the event the cancellation clause was exercised defendants would reimburse plaintiffs for their expenditures on a sliding scale. Cardaras advised plaintiffs that such a letter would be adequate security. Howard Goode, defendants' attorney, agreed to redraft the lease to remove certain other objectionable items. Goode returned with the lease and, according to Cardaras, stated that the letter suggested by Mann would be forthcoming after the lease was executed, the lease being conditioned upon the delivery of the letter. Daros and Gillespie executed the lease, Plaintiffs' Exhibit 2, on May 11, 1968, in Cardaras' office. Cardaras further testified that he knew at the time paragraph 21(e) was contained in the lease. After the following Monday, May 13, Cardaras no longer represented plaintiffs. On the date plaintiffs signed the lease, Cardaras made a few written notes on the lease.

Defendants Julius Lopin and Henry Mann and their attorney Howard C. Goode testified at trial that there was no conversation with Daros, Gillespie and Cardaras concerning the striking of paragraph 21(e) from the lease. The subject was not discussed at any meeting. The witnesses also testified that neither Mann nor any of them talked of delivering a letter to plaintiffs regarding reimbursement of plaintiffs' expenditures in the event of lease cancellation. The subject was never discussed.

Gordon Prussian, president of General Parking, testified that his company purchased the property from the original lessors in June 1969 for $1,250,000. Prior to purchasing the property, he examined the subject lease and observed the cancellation clause. Prussian was not aware of any claim by plaintiffs that paragraph 21(e) was to have been deleted until the filing of the present suit. During the summer of 1969, he observed remodeling in the coffee shop area of the hotel. Prussian was told by Lopin and Mann that the work was being done by the tenants, and that a restaurant would be open in the near future. The restaurant was operating in the fall of 1969, but closed in mid-November. Rent

was not paid in December 1969. General Parking was the largest auto-parking company in Chicago, but at the time of this purchase, it intended to lease the premises back to Lopin and operate a successful hotel with a restaurant. It decided to demolish the building when it received notice of cancellation from Lopin and Mann. After a drug store lease expired in April 1970, the premises were demolished and the property presently was being used for surface auto parking.

At trial Gillespie produced Plaintiffs' Exhibit 4, purporting to be the lease of the property. He testified that it had been delivered to his office sometime before September 1968, but he did not know or remember who delivered it. Various paragraphs, including 21, are deleted from Plaintiffs' Exhibit 4. However, the document appears to be incomplete. Portions of page one are missing, so that it does not show either the date of the instrument or the lessors' names. Certain paragraphs are deleted in mid-sentence. Gillespie testified that he turned over Plaintiffs' Exhibit 4 to Cardaras' successors as plaintiffs' counsel. Cardaras testified that the copying machine in his office could make copies of the type found in Plaintiffs' Exhibit 4, while Goode testified that the exhibit was not and could not have been prepared in his office.

Subsequent testimony indicated that exhibit 4 was used by plaintiffs in negotiating a loan from the Small Business Administration. It was also brought out at trial that in March 1969 plaintiffs sought an injunction against defendants and other parties relating to a labor dispute. To the complaint for injunction was attached a lease, a reproduction of Plaintiffs' Exhibit 4. Defendants filed an answer to that complaint and alleged that the attached lease was incomplete. The answer attached that portion of the lease which was missing. Plaintiffs filed a reply to other portions of the answer, but did not challenge defendants' assertion with respect to the lease.

At the conclusion of all the evidence, the trial judge reformed the lease in question as to the original lessors by deleting paragraph 21(e). The trial court denied reformation as against lessors' purchaser, General Parking. In discussing the reasoning of the order, the court commented that it would be incredible that plaintiffs, in view of their restaurant experience, would knowingly execute a lease providing for a minimum expenditure of $100,000 in the first year but also providing that they could be evicted in 90 days. The judge also found unbelievable testimony on behalf of the defendants that no discussion concerning cancellation took place.

■■ Reformation of a contract should be allowed only when clear and convincing evidence compels the conclusion that the instrument as it stands does not properly reflect the true intention of the parties,

and that there has been either a mutual mistake or a mistake by one party and fraud by the other. (*Booth v. Cole Corp.* (1970), 121 Ill.App. 2d 77, 257 N.E.2d 265; *Swan v. Allstate Insurance Co.* (1967), 89 Ill. App.2d 205, 232 N.E.2d 491.) In an action for reformation a written agreement is presumed to express the intention of the parties. (*Jogger Manufacturing Corp. v. Addressograph-Multigraph Corp.* (1952), 346 Ill.App. 1, 104 N.E.2d 655.) An action to reform a written agreement rests upon the theory that parties came to an understanding but in reducing it to writing, through mutual mistake or by mistake on one side and fraud on the other, some provisions agreed upon was omitted, and the action is brought to so change the instrument as written as to conform to a contract agreed upon by inserting the omitted provisions or striking out the one inserted by mutual mistake. (*Harley v. Magnolia Petroleum Co.* (1941), 378 Ill. 19, 37 N.E.2d 760.) In a reformation suit, the plaintiff has a higher burden of proof than in an ordinary civil lawsuit, and must prove a case by very strong, clear and convincing evidence. (*State Farm Mutual Auto Insurance Co. v. Hanson* (1972), 7 Ill.App.3d 678, 288 N.E.2d 523.) Further, written instruments may not be reformed on grounds of mistake of fact unless the mistake existed at the time of the execution of the instrument. *Sedlacek v. Sedlacek* (1969), 107 Ill.App.2d 334, 246 N.E.2d 6; *Wilcox v. Natural Gas Storage Co.* (1962), 24 Ill.2d 509, 182 N.E.2d 158.

■■ Under the foregoing criteria, we believe that the evidence was not sufficiently clear and convincing to entitle plaintiffs to a reformation of the contract, and that the trial court erred in reforming the lease by deleting paragraph 21(e). Even if the testimony presented by the defendants Lopin and Mann and their attorney is completely disregarded, as the trial judge was entitled to do, the testimony presented on behalf of plaintiffs as to their actual agreement with defendants was contradictory and in conflict. While plaintiffs Daros and Gillespie testified that defendants promised to remove paragraph 21(e), plaintiffs' attorney Andrew Cardaras testified that defendants made no such assurance or agreement. In fact, plaintiffs' counsel stated that at the time plaintiffs executed the lease he was aware that paragraph 21(e) remained in the lease. Indeed, Cardaras added that defendant Mann was insistent that on behalf of defendants he would never execute a lease which did not contain a cancellation clause as set forth in paragraph 21(e). Under such circumstances, the language of our supreme court in *Christ v. Rake* (1919), 287 Ill. 619, 622, 122 N.E. 854, is very pertinent:

"\* \* \* A written instrument will not be reformed on the ground of mistake unless the evidence that it does not express the intention of the parties is such as will strike all minds alike as being

unquestionable and free from reasonable doubt. The remedy of reformation on account of an alleged mistake is never granted upon a probability nor upon a mere preponderance of the evidence but only upon evidence amounting to a certainty."

■■ Plaintiffs maintain, however, that defendants perpetrated a fraud in concealing the fact that paragraph 21(e) had not been deleted from the final draft of the lease. This charge is belied by the uncontroverted evidence that plaintiffs Daros and Gillespie executed the final draft of the lease while in their attorney's office, with no representatives of the defendants present. Under those circumstances, it is difficult to perceive what concealment had taken place. Moreover, Cardaras was aware that paragraph 21(e) remained in the lease, and the fact that Daros and Gillespie failed to personally examine the contents of the lease prior to execution does not diminish the legal effect of the knowledge acquired by their attorney and agent. (See *County of Cook v. Schroeder* (1965), 55 Ill.App.2d 449, 205 N.E.2d 257.) While much attention was devoted at trial to Plaintiffs' Exhibit 4, a purported lease of the premises with paragraph 21 deleted, it is clear that in executing the actual lease, Plaintiffs' Exhibit 2, plaintiffs placed no reliance on the existence of Plaintiffs' Exhibit 4. The existence of the latter document, admittedly vague, in no way supports plaintiffs' claim that defendants concealed the fact that paragraph 21(e) remained in the lease executed by plaintiffs. Nor does the record support the charge that defendants by misrepresentation led plaintiffs to believe that its Exhibit 4 was the actual lease. Plaintiffs were not entitled to a reformation of the lease.

In view of our holding that plaintiffs did not establish this right to a reformation of the lease against the original lessors, it is unnecessary for us to consider plaintiffs' cross-appeal that the trial court erred in denying a reformation as to the original lessors' purchaser, General Parking.

Accordingly, that portion of the order of the circuit court of Cook County denying reformation of the lease as to General Parking is affirmed. That portion of the order granting reformation of the lease in favor of the plaintiffs against the original lessors is reversed.

Order affirmed in part; reversed in part.

DEMPSEY and McGLOON, JJ., concur.