# Illinois Official Reports

## Appellate Court

***Copes v. Northeast Illinois Regional Commuter R.R. Corp.*,
2015 IL App (1st) 150432**

| | |
|---|---|
| Appellate Court Caption | CHARLETHA COPES, Plaintiff-Appellant, v. NORTHEAST ILLINOIS REGIONAL COMMUTER RAILROAD CORPORATION, d/b/a Metra, Defendant-Appellee. |
| District & No. | First District, Sixth Division<br>Docket No. 1-15-0432 |
| Filed | December 4, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-11946; the Hon. James N. O'Hara, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Law Office of John Bishof, P.C., of Chicago (John S. Bishof, Jr., of counsel), for appellant.<br><br>Metra Law Department, of Chicago (Sue-Ann Rosen, General Counsel, and Stephen G. Goins, of counsel), for appellee. |
| Panel | PRESIDING JUSTICE ROCHFORD delivered the judgment of the court, with opinion.<br>Justices Hall and Delort concurred in the judgment and opinion. |

**OPINION**

¶ 1  The instant personal injury suit, filed by plaintiff-appellant, Charletha Copes, against defendant-appellee, the Northeast Illinois Regional Commuter Railroad Corporation, d/b/a Metra (NIRCRC), was dismissed for having been untimely filed beyond the one-year statute of limitations period contained in section 5.03 of the Regional Transportation Authority Act (Act) (70 ILCS 3615/5.03 (West 2012)). Plaintiff has appealed, contending that the limitations period contained in section 5.03 applies only to actions brought against the Regional Transportation Authority (Authority) itself, and it therefore does not bar plaintiff's instant suit against NIRCRC. For the following reasons, we affirm.

¶ 2                                              I. BACKGROUND

¶ 3  On October 29, 2013, plaintiff filed this action, identifying NIRCRC as "a corporation [which] provided rail passenger service within the territory serviced by the Regional Transportation Authority, including the county of Cook, State of Illinois." Plaintiff sought damages for injuries she sustained on or about December 2, 2011, when she allegedly slipped and fell on a wet and icy platform while attempting to board a train at the Stony Island Metra train station. Plaintiff further alleged that NIRCRC owned, operated, and maintained the Stony Island station, which is a stop on the Metra Electric District line.

¶ 4  NIRCRC responded to plaintiff's suit by filing a motion to dismiss, pursuant to section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2012)). In its motion, NIRCRC stated that its "true and proper name is the Northeast Illinois Regional Commuter Railroad Corporation, d/b/a METRA." NIRCRC further asserted that it was organized under the Act (70 ILCS 3615/1.01 *et seq*. (West 2012)), which includes a one-year statute of limitations (70 ILCS 3615/5.03 (West 2012)). NIRCRC also maintained that, as a public entity, it was protected by the one-year statute of limitations contained in the Local Governmental and Governmental Employees Tort Immunity Act (Immunity Act) (745 ILCS 10/8-101 (West 2012)). NIRCRC argued that plaintiff's suit–filed on October 29, 2013, with respect to an incident occurring on or about December 2, 2011–was untimely under the applicable limitations periods of both the Act and the Immunity Act.

¶ 5  Plaintiff responded to the motion to dismiss by arguing that the limitations provision of the Act applied only to actions against the Authority and that the Immunity Act did not cover suits against public entities which operate as a common carrier. See 745 ILCS 10/2-101 (West 2012). Rather, plaintiff maintained that her action was timely filed within the general two-year statute of limitations period applicable to personal injury suits. See 735 ILCS 5/13-202 (West 2012).

¶ 6  In reply, NIRCRC argued that section 5.03 of the Act was applicable because it was organized under the Act and, pursuant to section 2.20(a)(x) of the Act, "the same exemptions, restrictions and limitations as are provided by law with regard to the Authority shall apply to [NIRCRC]." 70 ILCS 3615/2.20(a)(x) (West 2012).

¶ 7  On May 13, 2014, the circuit denied the motion to dismiss, finding that: (1) the one-year statute of limitations provision of the Act applied only to the Authority and not to NIRCRC; and (2) the one-year statute of limitations contained in the Immunity Act did not apply to

NIRCRC "while operating as a common carrier." The circuit court denied NIRCRC's motion to reconsider the denial of its motion to dismiss on August 29, 2014.

¶ 8 On October 1, 2014, NIRCRC filed a second motion to dismiss pursuant to section 2-619(a)(5) of the Code, arguing only that plaintiff's suit was untimely under the one-year statute of limitations contained in the Act. NIRCRC again maintained that, because it was organized under the Act and section 2.20(a)(x) of the Act states that "the same exemptions, restrictions and limitations" (*id.*) which apply to the Authority also apply to it, the one-year statute of limitations set forth in section 5.03 of the Act applied to this case and barred plaintiff's action. In a written order entered on January 14, 2015, the circuit court granted NIRCRC's motion to dismiss after finding that–pursuant to the language contained in section 2.20(a)(x) of the Act–the one-year statute of limitations contained in the Act applied to this action. Plaintiff timely appealed the circuit court's dismissal order.

¶ 9                                                          II. ANALYSIS

¶ 10 On appeal, plaintiff concedes that her suit was not filed within the one-year statute of limitations set forth in section 5.03 of the Act, arguing instead that the limitations provision contained therein covers only the Authority, and not NIRCRC. We disagree, and therefore affirm the circuit court's dismissal of plaintiff's complaint.

¶ 11 Under section 2-619(a)(5) of the Code, the circuit court may dismiss a complaint which is "not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2012). We review the dismissal of a complaint on limitations grounds *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).

¶ 12 Further, this appeal requires us to construe the meaning of certain provisions of the Act. The rules applicable to this task are well-established, and were recently outlined in *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14:

> "The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of that intent is the language of the statute itself. [Citation.] In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. [Citations.] If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. [Citation.] A court may not depart from the plain language of the statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent. [Citation.]"

¶ 13 However, "[w]hen a statute is ambiguous, we look to aids of statutory construction, including legislative history." *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 38. We review questions of statutory construction *de novo*. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003).

¶ 14 While our analysis might well begin with the plain language of section 5.03 itself, we first place the language of section 5.03 into context by discussing the history of the Act and certain related statutory provisions.

¶ 15 The Act was first enacted in 1973, and provided for the creation of "a regional transportation authority to furnish public transportation services, facilities and funding in the six northeastern counties of Cook, Du Page, Kane, Lake, McHenry and Will," upon the success

of a 1974 referendum approving that action. *Hoogasian v. Regional Transportation Authority*, 58 Ill. 2d 117, 120 (1974); *Pace v. Regional Transportation Authority*, 346 Ill. App. 3d 125, 129 (2003). The need for the creation of such a regional authority was due, in large part, to the "grave financial condition" of public transportation facilities in northeastern Illinois. Pub. Act 78-5, § 1.02(a)(iii) (eff. Dec. 12, 1973) (adding 70 ILCS 3615/1.02(a)(iii)). The referendum approving the Act was found constitutional in *Hoogasian*, 58 Ill. 2d at 137. The Authority is a unit of local government. *Pace*, 346 Ill. App. 3d at 129; 70 ILCS 3615/1.04 (West 2012) ("Upon its establishment the Authority shall be a unit of local government, body politic, political subdivision and municipal corporation."). Among the many powers granted to the Authority is the power to "sue and be sued." 70 ILCS 3615/2.20(a)(i) (West 2012).

¶ 16    The Act, both as originally enacted and pursuant to amendments passed very shortly after the referendum, authorized the Authority to establish, by ordinance, a "separate public corporation to be known as the Northeast Illinois Regional Commuter Railroad Corporation" (*i.e.*, the defendant here). Pub. Act 78-5, § 2.20(a)(xii) (eff. Dec. 12, 1973) (adding 70 ILCS 3615/1.02(a)(xii)). NIRCRC was defined as a "separate operating unit to operate on behalf of the [Authority] commuter railroad facilities, subject at all times to the supervision and direction of the [Authority]." *Id*. At the time, NIRCRC was governed by the board of directors of the Authority. *Id*. The Act also stated that NIRCRC had very nearly all the powers given the Authority with regard to the operation of railroad facilities as were delegated by the Authority, including the power to sue and be sued but not including the power of eminent domain, and that "the same exemptions, restrictions and limitations as are provided by law with regard to the Authority shall apply to [NIRCRC]." *Id*. Finally, the Act designated NIRCRC as a "transportation agency as provided in this Act except for purposes of paragraph (e) of Section 3.01 of this Act." *Id*.[1]

¶ 17    As originally enacted, the Act also provided that all civil actions for personal injury or death against "the Authority" must be commenced within one year from the date the action accrued. Pub. Act 78-5, § 5.03 (eff. Dec. 12, 1973) (adding 70 ILCS 3615/5.03). In an amendment added shortly following the passage of the referendum, that limitation period was lengthened to two years. Pub. Act 78-1267, § 1 (eff. Dec. 30, 1974) (amending Ill. Rev. Stat. 1973, ch. 111$^2$/$_3$, ¶ 705.03).[2]

¶ 18    Due to recurring financial deficits in the operations of public transportation facilities in the area covered by the Authority, the Act was amended in 1983 to provide for additional state financial aid and to create "operating division[s]" within the Authority, including the commuter rail division (70 ILCS 3615/3B.01 (West 2012)), and the suburban bus division (70 ILCS 3615/3A.01 (West 2012)). See 70 ILCS 3615/1.02(b) (West 2012); *Pace*, 346 Ill. App.

---

[1]Paragraph (e) of section 3.01 originally provided that no member of the Authority's board of directors "shall, while serving as such, be an officer, a member of the Board of Directors or Trustees or an employee of any Service Board or transportation agency, or be an employee of the State of Illinois or any department or agency thereof, or of any municipality, county, or any other unit of local government or receive any compensation from any elected or appointed office under the Constitution and laws of Illinois." Pub. Act 78-5, § 3.01(e) (eff. Dec. 12, 1973) (adding 70 ILCS 3615/3.01(e)).

[2]As we will discuss more fully below, section 5.03 of the Act was subsequently amended again to return the limitations period to one year. Pub. Act 89-109, § 5 (eff. Jan. 1, 1996) (amending 70 ILCS 3615/5.03 (West 1994)).

3d at 129; *Stroger v. Regional Transportation Authority*, 201 Ill. 2d 508, 513 (2002).[3] As relevant here, section 3B.01 of the Act specifically states that "[t]here is established *within* the Authority the Commuter Rail Division as the operating division responsible for providing public transportation by commuter rail." (Emphasis added.) 70 ILCS 3615/3B.01 (West 2012).

¶ 19    The commuter rail (70 ILCS 3615/3B.02 (West 2012)) and suburban bus (70 ILCS 3615/3A.02 (West 2012)) divisions have separate governing boards, or "Service Boards," which have the responsibility for providing and operating their respective transportation systems. *Pace*, 346 Ill. App. 3d at 129; 70 ILCS 3615/2.01(a), 1.03 (West 2012). The 1983 amendments "also designated as a service board the governing board of the Chicago Transit Authority (CTA)," which has existed since 1945 pursuant to the Metropolitan Transit Authority Act. *Pace*, 346 Ill. App. 3d at 129 (citing 70 ILCS 3605/1 *et seq.* (West 2000)).

¶ 20    The service boards "determine the level, nature and kind of public transportation which should be provided" (70 ILCS 3615/2.01(a) (West 2012)), and "may provide public transportation by operating facilities or through purchase of service agreements (PSAs) with other transportation agencies." *Barton v. Chicago & North Western Transportation Co.*, 325 Ill. App. 3d 1005, 1010 (2001); 70 ILCS 3615/2.03 (West 2012). Under section 3B.09 of the Act, the commuter rail board has very nearly all of the powers given to the Authority in section 2.20 of the Act, including the power to sue and be sued but not including the power to enter onto private property. 70 ILCS 3615/3B.09, 2.20(a)(i), (a)(v) (West 2012). The commuter rail board is "to cooperate with the [Authority] in the exercise by the [Authority] of all the powers granted it by [the Act]." 70 ILCS 3615/3B.09(a) (West 2012).

¶ 21    Under the 1983 amendments: "The [Authority] retained responsibility for the financial oversight of the system and for facilitating the service boards' efforts to deliver public transportation in the region." *Pace*, 346 Ill. App. 3d at 129 (citing 70 ILCS 3615/1.02(c) (West 2000)); see also 70 ILCS 3615/2.01(a)(v), (b) (West 2012) (requiring the Authority to "provide financial oversight of the Service Boards" and to "subject the operating and capital plans and expenditures of the Service Boards *** with regard to public transportation to continuing review so that the Authority may budget and expend its funds with maximum effectiveness and efficiency"). The legislature has described the purpose of the Act, as amended, to be as follows:

> "It is the purpose of this Act to provide for, aid and assist public transportation in the northeastern area of the State without impairing the overall quality of existing public transportation by providing for the creation of a single authority responsive to the people and elected officials of the area and with the power and competence to develop, implement, and enforce plans that promote adequate, efficient, and coordinated public transportation, provide financial review of the providers of public transportation in the metropolitan region and facilitate public transportation provided by Service Boards which is attractive and economical to users, comprehensive, coordinated among its various elements, economical, safe, efficient and coordinated with area and State plans." 70 ILCS 3615/1.02(d) (West 2012).

---

[3] Although not included anywhere in the language of the Act, the commuter rail division and the suburban bus division are commonly known as, respectively, "Metra" and "Pace." *Stroger*, 201 Ill. 2d at 513.

¶ 22    Section 2.20(a)(x) of the Act, as amended, provides that the commuter rail board "shall continue the separate public corporation, known as the Northeast Illinois Regional Commuter Railroad Corporation, as a separate operating unit to operate on behalf of the Commuter Rail Board commuter railroad facilities." 70 ILCS 3615/2.20(a)(x) (West 2012). Thus, under the amended Act it is the commuter rail board, rather than the Authority's board, which now directly oversees NIRCRC. *Id.*; *Barton*, 325 Ill. App. 3d at 1010 ("NIRCRC is a corporation maintained, supervised and directed by the Commuter Rail Board ***, the governing body of the Commuter Rail Division *** of the [Authority] *** under [the Act] [citation]."). Further, section 2.20(a)(x) states that NIRCRC "shall have all the powers given the Authority and the Commuter Rail Board under Article II of this Act [other than under the power of eminent domain] as are delegated to it by ordinance of the Commuter Rail Board with regard to such operation of facilities and the same exemptions, restrictions and limitations as are provided by law with regard to the Authority shall apply to such Corporation." 70 ILCS 3615/2.20(a)(x) (West 2012). Finally, section 2.20(a)(x) of the Act provides that NIRCRC is a "transportation agency as provided in this Act except for purposes of paragraph (e) of Section 3.01 of [the Act]." *Id.*[4]

¶ 23    As defined in the Act, references to the " 'Authority' " mean the "Regional Transportation Authority" (70 ILCS 3615/1.03 (West 2012)), while a " 'Transportation Agency' " refers to "any individual, firm, partnership, corporation, association, body politic, municipal corporation, public authority, unit of local government or other person, other than the Authority and the Service Boards, which provides public transportation, any local mass transit district created pursuant to the 'Local Mass Transit District Act', as now or hereafter amended, and any urban transportation district created pursuant to the 'Urban Transportation District Act', as now or hereafter amended, which districts are located in whole or in part within the metropolitan region." *Id*. " 'Service Boards' " are defined to include "the Board of the Commuter Rail Division of the Authority, the Board of the Suburban Bus Division of the Authority and the Board of the Chicago Transit Authority established pursuant to the 'Metropolitan Transit Authority Act', approved April 12, 1945, as now or hereafter amended." *Id*.

¶ 24    In summary, under the Act as currently amended, the Authority is charged with providing transportation to the public in the northeast region of this state. To achieve that goal, the legislature created operating divisions "within" the Authority, including the commuter rail division. The commuter rail board governs the commuter rail division and provides commuter rail service, in part, through a separate operating unit and public corporation, NIRCRC. NIRCRC was first created by the Authority pursuant to an Authority ordinance under the Act as originally enacted. After the 1983 amendments, the commuter rail board was to continue and, also govern, NIRCRC as a separate operating unit and public corporation. Under the Act,

_____

[4]The current reference to paragraph (e) of section 3.01, as opposed to paragraph (f), appears to represent either a typographical error or a failure of the legislature to account for prior amendments to section 3.01 of the Act. As we noted above, paragraph (e) of section 3.01 originally contained restrictions on the members of the Authority's board of directors from serving in various capacities with a transportation agency or other governmental unit. Those restrictions are now contained in paragraph (f), and also include similar restrictions with respect to the more recently created service boards. The current content of paragraph (e) seems irrelevant to NIRCRC. See Ill. Rev. Stat. 1975, ch. 111$^2$/$_3$, ¶ 703.01(e); 70 ILCS 3615/3.01(e), (f) (West 2012).

NIRCRC is to be considered a transportation agency, albeit one with all the powers given the Authority and the commuter rail board with regard to the operation of commuter rail facilities as delegated to it by commuter rail board ordinance–subject to some limited exceptions–and subject to the same exemptions, restrictions and limitations as are provided by law with regard to the Authority.

¶ 25 With this background in mind, we now turn to the plain language of section 5.03, which includes both an immunity provision and a statute of limitations. Specifically, section 5.03 provides:

> "The Authority shall not be liable in any civil action for any injury to any person or property for any acts or omissions of any transportation agency or unit of local government, as a result of the Authority making grants to or having a purchase of service agreement with such agency or unit of local government. Nothing in this Act, however, limits the power of the Authority in its purchase of service agreements to pay the cost of any such injuries.

> No civil action shall be commenced in any court against the Authority by any person on account of any wrongful death or for any injury to any person unless it is commenced within one year from the date that the cause of action accrued; provided, however, that the foregoing shall not limit a transportation agency in bringing a civil action to enforce its rights under a purchase of service agreement with the Authority. This amendatory Act of 1995 applies only to causes of action accruing on or after January 1, 1996." 70 ILCS 3615/5.03 (West 2012).

¶ 26 Viewing section 5.03 in isolation, it might appear that the one-year statute of limitations contained therein does not apply to NIRCRC. The plain language of section 5.03 clearly differentiates between the Authority and transportation agencies such as NIRCRC, both in the initial immunity provision and in the second paragraph containing the statute of limitations. Furthermore, by its own plain language, section 5.03 only provides for a one-year statute of limitations for personal injury or wrongful death actions "against the Authority." *Id*.

¶ 27 However, we note again that "[i]n determining the plain meaning of statutory language, a court will consider the statute in its entirety." *Hendricks*, 2015 IL App (3d) 140858, ¶ 14. Thus, we must also consider the language of section 2.20(a)(x) of the Act, which specifically provides that NIRCRC "shall have all the powers given the Authority and the Commuter Rail Board under Article II of this Act [other than under the power of eminent domain] as are delegated to it by ordinance of the Commuter Rail Board with regard to such operation of facilities and the same exemptions, restrictions and limitations as are provided by law with regard to the Authority shall apply to [NIRCRC]." 70 ILCS 3615/2.20(a)(x) (West 2012). The parties have not provided, and this court has not reviewed, any of the ordinances passed by the commuter rail board to determine exactly which of the powers contained in article II of the Act have actually been delegated to NIRCRC.

¶ 28 Nevertheless, it seems apparent that one of the powers delegated to NIRCRC is the power of the Authority and the commuter rail board to sue and be sued. See 70 ILCS 3615/3B.09, 2.20(a)(i) (West 2012). Indeed, neither party here has questioned the fact that NIRCRC also has this power, and this court's own research indicates that the ability of NIRCRC to be involved in litigation as a separate legal entity has not been questioned in dozens of other matters involving NIRCRC as a party. If NIRCRC has the Authority's power to be sued under

the Act, we fail to see why it would not also have the protections from suit provided to the Authority in section 5.03.

¶ 29    We need not rely upon any such speculation here, however, as we actually rely upon that portion of section 2.20(a)(x) of the Act which provides that "the same exemptions, restrictions and limitations as are provided by law with regard to the Authority shall apply to [NIRCRC]." 70 ILCS 3615/2.20(a)(x) (West 2012). We find that this expansive language is sufficient to include the one-year statute of limitations period contained in section 5.03 of the Act, leading us to further conclude that this limitations period therefore also applies to NIRCRC.

¶ 30    In reaching this conclusion, we have considered and rejected the two cases primarily relied upon by the parties on appeal. First, NIRCRC asks this court to analogize this matter to the situation presented in *Brown v. Pace Suburban Bus Service*, 2014 IL App (1st) 132831-U, wherein this court found that a personal injury suit filed against Pace–an operating division of the Authority–was subject to the one-year limitations period of section 5.03. *Id.* ¶ 20. However, as Illinois Supreme Court Rule 23(e) (eff. July 1, 2011), provides, such unpublished orders are "not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Thus, NIRCRC should not have cited *Brown* as precedential authority in support of its arguments and we will not consider it further here.

¶ 31    Plaintiff, in turn, has primarily relied on this court's decision in *Eskew v. Burlington Northern & Santa Fe Ry. Co.*, 2011 IL App (1st) 093450. In that case, the plaintiff brought suit against the Burlington Northern and Santa Fe Railway Company (BNSF), NIRCRC, and the Authority. *Id.* ¶ 1. The Authority was dismissed prior to trial. *Id.* ¶ 61. In returning a verdict against the remaining defendants, the jury apportioned liability between BNSF and NIRCRC. *Id.* ¶ 1. The train involved in the suit was operated by BNSF under a purchase service agreement with NIRCRC. *Id.* ¶ 2.

¶ 32    On appeal, NIRCRC argued that the claims against it were time-barred under section 5.03 of the Act. *Id.* ¶ 60. In response to this contention, this court first stated that "[t]he clear and unequivocal language in this provision establishes that the one-year statute of limitations applies only to claims against the [Authority]." *Id.*

¶ 33    However, we also observed that while the Authority was dismissed pursuant to a motion to dismiss which raised, in part, the limitations provision of section 5.03, NIRCRC had not contended that it was "the same as the [Authority] and should have been similarly dismissed." *Id.* ¶ 61. Further, NIRCRC did not "cite any precedential authority or evidentiary support in the record explaining how the one-year statute of limitations" in section 5.03 applied to NIRCRC and, therefore, the issue had been forfeited on appeal. *Id.* Thus, this court did not actually reach the merits of NIRCRC's argument regarding section 5.03 in *Eskew*, we were not asked to consider the language of section 5.03 in light of the language contained in section 2.20(a)(x), and that decision therefore does not lend any support to plaintiff here.

¶ 34    Indeed, neither party has cited a published decision which substantively addresses the issue of whether the protections provided in section 5.03 of the Act apply to NIRCRC, nor has this court's research revealed any such case. Published cases have, however, made the assumption that section 5.03 does apply to NIRCRC, albeit without any further discussion. See *Barton*, 325 Ill. App. 3d at 1035 (assuming, without discussion, that the immunity provision contained in section 5.03 applies to NIRCRC); *Bergstrom v. McSweeney*, 294 F. Supp. 2d 961, 969 (N.D. Ill. 2003) (same, with respect to the limitations period contained in section 5.03).

¶ 35    Ultimately, we conclude that the plain language of the Act supports NIRCRC's argument that the limitations period contained in section 5.03 applies to suits against it, and that *at most* plaintiff has raised a plausible argument that the language of the Act is ambiguous with respect to this issue. Any possible ambiguity is easily resolved, however, when we consider the Act's purpose and legislative history. See *Relf v. Shatayeva*, 2013 IL 114925, ¶ 24 ("Statutes of limitation, like other statutes, must be construed in the light of their objectives."); *Advincula v. United Blood Services*, 176 Ill. 2d 1, 19 (1996) ("Valuable construction aids in interpreting an ambiguous statute are the provision's legislative history and debates ***.").

¶ 36    It must be recalled that the Authority was originally created due to the "grave financial condition" of public transportation facilities in northeastern Illinois. Pub. Act 78-5, § 1.02(a)(iii) (eff. Dec. 12, 1973) (adding 70 ILCS 3615/1.02(a)(iii)). Similarly, the significant amendments to the Act that called for–*inter alia*–the creation of the commuter rail division and the commuter rail board were necessitated by continuing and recurring financial deficits in the operations of public transportation facilities in that area. *Pace*, 346 Ill. App. 3d at 129; *Stroger*, 201 Ill. 2d at 513. Throughout its history, the Act has sought to address such financial struggles while also providing public transportation "which is attractive and economical to users, comprehensive, coordinated among its various elements, economical, safe, efficient and coordinated with area and State plans." 70 ILCS 3615/1.02(d) (West 2012).

¶ 37    In order to achieve these goals, the Act authorizes the creation of a number of separate local governmental entities, including: (1) the Authority (70 ILCS 3615/1.04 (West 2012) ("Upon its establishment the Authority shall be a unit of local government, body politic, political subdivision and municipal corporation.")); (2) the commuter rail and suburban bus divisions of the Authority (see *Pace*, 346 Ill. App. 3d at 142-43 (recognizing that Pace, as the suburban bus division of the Authority, is a separate local governmental entity), and *City of Evanston v. Regional Transportation Authority*, 202 Ill. App. 3d 265, 275 (1990) (same)); and (3) NIRCRC (*Smith v. Northeast Illinois Regional Commuter R.R. Corp.*, 210 Ill. App. 3d 223, 227 (1991) (recognizing that NIRCRC is a local governmental entity, as it "is a not-for-profit corporation with no shareholders, funded with public funds from [the Authority] and operates a commuter rail line in the public interest")).[5] Illinois has long offered such local governmental entities legal protection in the form of the abridged, one-year statute of limitations period contained in the Immunity Act. 745 ILCS 10/8-101(a) (West 2012). As our supreme court has stated:

> "The purpose of the one-year limitation period contained in section 8-101(a) is to encourage early investigation into a claim against a local governmental entity when the matter is still fresh, witnesses are available, and conditions have not materially changed. [Citations.] Such an investigation permits prompt settlement of meritorious claims and allows governmental entities to plan their budgets in light of potential liabilities. [Citations.] Because a local governmental entity must anticipate that the number of claims made against it will far exceed those brought against a private individual, the provision of an abridged limitations period is reasonable. [Citations.]" *Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 279 (2010).

---

[5]As we noted above, while the Act did not create the CTA it did designate the governing board of the CTA as a service board. 70 ILCS 3615/1.03 (West 2012). The CTA is also considered a unit of local government. 70 ILCS 3605/3 (West 2012).

¶ 38 These same concerns apply here, especially in light of the long history of financial difficulties among public transportation providers in northeastern Illinois. As much as placing such public transportation providers on a more sound financial footing motivated the legislature to pass the Act in a general sense, it also clearly motivated the legislature to provide for a one-year statute of limitations specifically applicable to actions brought against the Authority, Pace, Metra, and NIRCRC.[6]

¶ 39 Indeed, the relationship between the limitations periods contained in the Act and the Immunity Act was made explicit in connection with the most recent amendment to section 5.03 of the Act, which as noted above returned the limitations period contained therein to one year. Pub. Act 89-109, § 5 (eff. Jan. 1, 1996) (amending 70 ILCS 3615/5.03 (West 1994)). In the debate surrounding this amendment in the House of Representatives, it was explained that this amendment would:

> "[M]ake[ ] a correction in the RTA Act that was the result of a legislative oversight several years ago. It's very simple. It reduces the statute of limitations for filing suits under the RTA Act from two years to one year. In 1986[,] all units of local government were granted one-year statute of limitations under the Local Government and Governmental Employees Tort Immunity Act. The CTA has that limitation. This bill simply addresses the oversight and provides the RTA, Metra and Pace with the same protection now provided the CTA and every other unit of local government." 89th Ill. Gen. Assem., Senate Proceedings, Mar. 23, 1995, at 42 (statements of Senator Parker).

A similar colloquy in the House of Representatives also establishes that the purpose behind the 1996 amendment was to ensure that suits against "all local public entities," including suits for "a bodily injury accident if they are related to the RTA," would be subject to a one-year statute of limitations. 89th Ill. Gen. Assem., House Proceedings, May 8, 1995, at 52 (statements of Representative Pankau).

¶ 40 In the end, the plain language of the Act viewed in its entirety, its legislative history and purpose, and the content of the legislative debate quoted above all lead us to conclude that the one-year statute of limitations contained in section 5.03 applies to NIRCRC. As such, the circuit court properly dismissed plaintiff's complaint.

¶ 41 III. CONCLUSION

¶ 42 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 43 Affirmed.

---

[6]The legislature has also specifically provided that a one-year statute of limitations applies to actions brought against the CTA. 70 ILCS 3605/41 (West 2012).