CHICAGO TRANSIT AUTHORITY, Plaintiff-Appellee, *v.* MATTHEW J. DANAHER, Clerk of the Circuit Court of Cook County, Defendant-Appellant.— (CHICAGO HOUSING AUTHORITY, Intervening Plaintiff-Appellee.)

First District (2nd Division)  No. 61348

Opinion filed July 27, 1976.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner, Henry A. Hauser, and David J. Magee, Assistant State's Attorneys, of counsel), for appellant.

Norman J. Barry, Joseph P. Della Maria, Jr., and Ronald K. Bartkowicz, all of Chicago (Rothschild, Barry & Myers, of counsel), for appellee Chicago Transit Authority.

Calvin H. Hall, of Chicago, for appellee Chicago Housing Authority.

Mr. JUSTICE DOWNING delivered the opinion of the court:

The Chicago Transit Authority (CTA) and the Chicago Housing Authority (CHA), as intervenor, brought a declaratory judgment action against Matthew J. Danaher, clerk of the circuit court of Cook County

(Danaher), alleging that they are "units of local government" and consequently should not be required to pay any filing fees to the clerk of the circuit court pursuant to section 14.1 of "An Act concerning fees and salaries * * * " (Ill. Rev. Stat. 1973, ch. 53, par. 31.1), which in pertinent part states:

> "No fee provided herein shall be charged to any unit of local government or school district unless the court orders another party to pay such fee on its behalf."[1]

After the filing of the complaint, the parties' answers, and motions for summary judgment by all parties, the trial court declared that both CTA and CHA were "units of local government" within the meaning of article VII, section 1 of the 1970 Illinois Constitution, and found that they were exempt from the payment of filing fees pursuant to the above statute. It is from this determination that Danaher prosecutes this appeal.

■■ On appeal Danaher urges that neither CTA nor CHA are within the meaning of the phrase "units of local government" as used in the 1970 Constitution and have not been designated as such by statute. Alternatively Danaher urges that CTA and CHA are not special districts because they lack the requisite fiscal and administrative independence. CTA and CHA assert that they are "special districts," or alternatively "units designated as units of local government by law."

Both CTA and CHA were designated by statute as municipal corporations[2] at the time of their legislative creation. By statute, both CTA and CHA have considerable autonomy. CTA was established pursuant to the Metropolitan Transit Authority Act (MTAA) (Ill. Rev. Stat. 1945, ch. 111-2/3, par. 301 et seq.). Its duty is to acquire, construct, own, operate and maintain, for public service, a public transportation system within metropolitan Cook County. Sections 8 and 9 of MTAA give CTA the power to contract with other entities and to purchase and dispose of land. Sections 12 and 15 authorize CTA to issue revenue bonds and to solicit and accept Federal and State grants. CHA was established pursuant to the Housing Authorities Act (HAA) (Ill. Rev. Stat. 1935, ch. 67½, par. 1 et seq.). Its duty is to prepare, carry out, construct and operate low income housing projects. Sections 8.1-8.8 of HAA give to CHA the power to contract with other entities, to purchase and dispose of land, to obtain property by eminent domain, to provide for the construction, operation and management of public housing units, to issue revenue bonds, and to solicit and accept Federal and State grants. Neither CTA nor CHA has any taxing power.

---

[1] On June 22, 1976, the Illinois General Assembly passed HB 3436 amending ch. 53, pars. 71, 72, 73, and 81, exempting units of local government and school districts from paying certain other fees. As of the date of this opinion, this legislation is awaiting action by the Governor.

[2] The term "municipal corporation" originated in statutory texts and has no constitutional origin in either the 1870 or 1970 Constitution.

With this background information we must decide what the constitutional convention had in mind when it adopted the definitional section (section 1, article VII) which is the basis for the dispute between the parties in the instant case.

The 1970 Illinois Constitution, article VII, section 1 provides:

" ' Municipalities' means cities, villages and incorporated towns. 'Units of local government' means counties, municipalities, townships, special districts, and units, designated as units of local government by law, which exercise limited governmental powers or powers in respect to limited governmental subjects, but does not include school districts."

Under the constitutional definition of "units of local government" it is our opinion that plaintiffs are "special districts" obviating the necessity of considering whether they are "units designated as units of local government by law."

I.

The 1870 Illinois Constitution—in effect at the time the 1970 constitutional convention convened—contained no reference to types of local governments. The 1870 Constitution contained no restraint on the legislature in the creation, identification or classification of local governments. Consequently, with the growth of the State and the demands by the citizens for local government, pursuant to statute, approximately 6,500 types of government were established in Illinois by 1970. These units could be generally classified as counties, townships, municipalities (e.g., cities or villages), school districts and a variety of special districts.[3] Faced with the desire to establish "home rule" in Illinois, the convention devised a modern local government article which, for the first time in any Illinois constitution defined the types of Illinois local governments. Article VII, the local government article in the 1970 Constitution, sets forth the powers given to the various local governments in Illinois.

We have reviewed the debates of the constitutional convention (5 Record of Proceedings, Sixth Illinois Constitutional Convention 4207-08, 4247, 4527-28; hereinafter cited as Proceedings), the committee proposals and reports (7 Proceedings 1569-1998, 2479, 2556, 2603), and the verbatim transcripts (4 Proceedings 3025-38, 3440) of the convention insofar as they deal with section 1, which is new to the text of our constitutions. Its purpose is to define the phrase "units of local government" and "municipality" (7 Proceedings 2724). It is the outgrowth of the desire on the part of the convention to use key terms which would be uniformly used throughout the local government article of the 1970 Constitution.

[3] See Anderson and Lousin, From Bone Gap to Chicago: A History of the Local Government Article of the 1970 Illinois Constitution, 9 J. Mar. J. Prac. & Proc. 698 (1976).

The 1970 Illinois Constitution recognizes three categories of State and local government: the State and its agencies, units of local government, and school districts. (Ill. Ann. Stat., Ill. Const., art. VII, §1, Constitutional Commentary (Smith-Hurd 1971); see 4 Proceedings 3024-25.) The following is a sample illustration of the recognition of these categories in the constitution. Article 1, The Bill of Rights, section 18, reads that equal protection of the laws shall not be denied or abridged on account of sex by the State or its units of local government and school districts." Article VII, Local Government, section 10, provides for intergovernmental cooperation and at (a) says that "units of local government and school districts" may contract or otherwise associate among themselves, with the State or other States. Article VIII, Finance, contains the following references: section 1(b) reads that "[t]he State, units of local government and school districts shall incur obligations for payment or make payments from public funds only as authorized by law or ordinance"; section 1(c) reads that reports and records of the obligation, receipt and use of public funds of the "State, units of local government and school districts" are public records available for inspection by the public according to law; section 2 also distinguishes between the State and units of local government or school districts; and section 4 provides for systems of accounting that shall be used by "units of local government and school districts."

In our opinion the framers of the 1970 Constitution intended to recognize only three levels of government: the State and its agencies, municipalities and units of local government, and school districts. Section 1 represents the intent of the convention to find and adopt a definition for all the myriad of types of local governments in Illinois. We find no intent on the part of the convention to exclude any of the then existing types of local governments. As stated by Delegate Parkhurst, "The proposed article does not constitutionally abolish a single unit of local government." (4 Proceedings 3024.) The other feature of the then existing local governments that concerned the delegates was the manner in which persons were appointed to the boards of the various types of local governments (4 Proceedings 3440). In some, the judiciary had appointed the officials. The 1970 convention, after much debate, in section 8 of article VII provided: "The General Assembly shall provide by law for the selection of officers of the foregoing units, but the officers shall not be appointed by any person in the Judicial Branch."

A review of the local government article clearly indicates the intent of the convention to establish constitutional standards for local government in Illinois. After dealing with matters pertaining to counties, townships and home rule units in section 8, there is set forth the mandate that townships, school districts, special districts and units of local government

shall have only the powers granted to them by law, as well as certain prohibitions in the legislature relative to debt and special assessments.

■■ In interpreting a constitution, the chief purpose sought to be attained is the intention of the framers. (*Hills v. City of Chicago* (1871), 60 Ill. 86, 90.) The constitution should be construed so as to give effect to the spirit and purpose of the provisions. (*People ex rel. Nelson v. Jackson-Highland Building Corp.* (1948), 400 Ill. 533, 536, 81 N.E.2d 578; *Mitchell v. Lowden* (1919), 288 Ill. 327, 334, 123 N.E. 566.) As said in *People v. Stevenson* (1917), 281 Ill. 17, 26, 117 N.E. 747, "The language and words of a constitution, unless they be technical words and phrases, will be given effect according to their usual and ordinary signification, and courts will not disregard the plain and ordinary meaning of the words used, to search for some other conjectural intention." All parts of the constitution must be construed together (*People ex rel. Wellman v. Washburn* (1951), 410 Ill. 322, 328, 102 N.E.2d 124) and, if possible, effect given to each of them.

With these well established principles in mind, we look at section 1 and the words used therein. The words "special district," so far as they are used in reference to units of government, have a technical meaning. A "special district" is a relatively autonomous local government which provides a single service.[4] They have also been characterized as "possessing a structural form, an official name, perpetual succession, and the right to make contracts and to dispose of property." (See 1973 Illinois Attorney General's Opinions, 102, 104, No. S—601, dated June 27, 1973.) Although there is nothing in the record of the 1970 convention to which we have been referred which defines "special districts," we are firmly convinced that both CTA and CHA possess those features which bring each within the technical meaning of the term "special district," as commonly understood.

To adopt the position of Danaher would be in effect creating yet another type of local government not included under the umbrella of "special districts" in section 1.

The parties in support of their respective positions cite Attorney General's Opinion S—601 which held that under the 1970 Constitution a public health district which possesses the authority to levy an annual tax is a unit of local government. Danaher urges that S—601, which states that special districts "usually have their own powers of taxation," and they have "considerable fiscal and administrative independence from other governments," supports his contention that neither CTA nor CHA are special districts. We do not agree for the simple reason we find nothing in

---

[4] See *From Bone Gap to Chicago, supra*, at 700 n. 8. It is to be noted that this excellent article was written by *Joan G. Anderson*, a delegate member of the Committee on Local Government, 1970 convention, and *Ann Lousin*, Research Assistant to the convention.

the record of the convention that such criteria was the determining basis upon which the convention arrived at its definition in section 1.

So far as we have determined, the case of *People ex rel. Hanrahan v. Caliendo* (1971), 50 Ill. 2d 72, 277 N.E.2d 319 is the only expression by our supreme court on section 1 of article VII. In that case the supreme court was considering an appeal in a quo warranto action testing the constitutionality of the Urban Transportation District Act. While affirming the constitutionality of the act, the supreme court stated, "We consider that the district is a unit of local government under section 1, article VII * * * ." (50 Ill. 2d 72, 87.) We do not believe that language provides any guidance in the instant case.

For these reasons we affirm the judgment of the circuit court of Cook County.

Judgment affirmed.

STAMOS, P. J., and JIGANTI, J., concur.