LORRAINE A. PATINKIN, Plaintiff-Appellant, v. REGIONAL TRANS-
PORTATION AUTHORITY *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—90—1423

Opinion filed June 3, 1991.

B. John Mix, Jr., of Chicago, for appellant.

William H. Farley, Jr., of Chicago Transit Authority, of Chicago (Anthony J. Ritrovato, of counsel), for appellee Chicago Transit Authority.

Mayer, Brown & Platt, of Chicago (James E. Tancula, Susan Kozik Jones, and Jori S. Kessler, of counsel), for appellee Regional Transportation Authority.

JUSTICE O'CONNOR delivered the opinion of the court:

In this appeal we consider whether the notice of an intention to file suit against the Regional Transportation Authority (RTA) satisfies the statutory precondition of notice of suit necessary to maintain an action against the Chicago Transportation Authority (CTA).

On August 10, 1988, Lorraine A. Patinkin was allegedly injured when a window of an elevated train, on which she was a passenger, fell on her finger.

Thereafter, Patinkin, in writing, advised the RTA of her intention to file suit against it for her injuries, directing the notice to the secretary of the RTA and its general attorney. The notice was stamped, indicating it was received in the office of the RTA secretary on January 31, 1989, and was signed by the RTA general attorney, indicating it was received by him a day later.

On August 8, 1989, plaintiff filed a single-count complaint against the RTA for negligence.

The RTA moved to dismiss the complaint pursuant to a provision in the Regional Transportation Authority Act (RTA Act), immunizing it from liability for injuries resulting from the negligence of any transportation agency to which the RTA provided funds or with which it had a purchase of service agreement. (Ill. Rev. Stat. 1989, ch. 111⅔,

par. 705.03.) The motion was supported by the affidavit of the chief administrative officer of the RTA, stating the RTA did not own or operate transportation facilities such as the one alleged in plaintiff's complaint.

On December 7, 1989, plaintiff amended her complaint to state two counts. Count I repeated the allegations of the original complaint against the RTA. Count II stated the same allegations, but against the CTA, adding that the notice plaintiff caused to be served on the RTA constituted sufficient notice to the CTA.

Plaintiff then sought to depose the RTA general attorney, apparently for purposes of establishing that the RTA, as a matter of practice, forwarded notices of suit served upon it to the CTA, and did so in the instant case. When the RTA refused plaintiff's request, plaintiff moved, unsuccessfully, to compel the deposition.

Plaintiff's action against the RTA was subsequently dismissed on February 22, 1990.

The CTA then also moved to dismiss (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) the action stated against it in count II. The CTA asserted plaintiff had failed to serve it with proper notice within six months from the date of injury and failed to file the action against it within one year from the date of injury, both as required under section 41 of the Metropolitan Transit Authority Act (MTA Act) (Ill. Rev. Stat. 1989, ch. 111⅔, par. 341).

On April 18, 1990, the circuit court dismissed, with prejudice, plaintiff's action against the CTA.

This appeal followed.

Initially, we note plaintiff directs attention on appeal almost exclusively to whether it was proper to deny plaintiff an opportunity to depose the RTA general attorney. That issue presupposes that facts gleaned through such discovery would have shown that dismissal of the complaint was improper for lack of proper notice. We therefore consider plaintiff's argument within the larger examination of whether the facts, as alleged, or as might be established through discovery, establish compliance with the notice requirements of the MTA Act.

■ Section 41 requires that actions against the CTA be commenced within one year from the date of injury. (Ill. Rev. Stat. 1989, ch. 111⅔, par. 341.) Persons seeking to commence such actions must, within six months from the date of injury, "file in the office of the secretary of the [Chicago Transit] Board and also in the office of the General Attorney for the [CTA] *either by himself, his agent, or attorney*, a statement, in writing, signed by himself, his agent, or attor-

ney," giving the names and addresses of relevant parties, including attending physicians, and the time and place of the accident. (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 111⅔, par. 341.) Failure to comply with the above provisions will result in dismissal of the action against the CTA. Ill. Rev. Stat. 1989, ch. 111⅔, par. 341.

The Illinois Appellate Court has previously noted that section 41, like other statutes of similar nature, is mandatory, requiring the claimant to bear the burden of compliance in strict conformity with its stated terms. (*Hayes v. Chicago Transit Authority* (1950), 340 Ill. App. 375, 382, 92 N.E.2d 174, 176.) The point has been illustrated most often in cases in which notice in accordance with the section's terms was lacking, but the CTA was otherwise made aware of the accident and the injured party's intent to sue.

For example, in *Murphy v. Chicago Transit Authority* (1989), 191 Ill. App. 3d 918, 548 N.E.2d 403, the appellate court held section 41 had not been complied with even though the CTA acknowledged receipt of written documents from plaintiff's counsel and her physician in support of plaintiff's claim. Additionally, the court noted, plaintiff's alleged mailing of a letter on instructions of a CTA claims manager, the receipt of which the CTA disputed, could not have constituted a filing in the office of the secretary or of the general attorney as required by section 41. (*Murphy*, 191 Ill. App. 3d at 921, 548 N.E.2d at 405.) Although recognizing improper notice might be cured by the filing of a complaint, itself, within the six-month period, the court rejected the argument that the CTA could be estopped to assert noncompliance with section 41 where it had received information or documents pertaining to a claim, but the statutory notice was defective and the suit not filed within six months from the date of injury. *Murphy*, 191 Ill. App. 3d at 921-22, 548 N.E.2d at 405.

More closely analogous to the instant case, however, is *Hayes v. Chicago Transit Authority* (1950), 340 Ill. App. 375, 92 N.E.2d 174. *Hayes* involved an action against the CTA for injuries plaintiff allegedly received in January 1948 while riding on a streetcar. In February 1948, the CTA procured, through its investigators, a written statement from the plaintiff giving the details of the incident, including the name of the attending physician. In her complaint, plaintiff alleged that the statement "was served upon and was available" to the secretary of the Chicago Transit Board and the CTA general attorney. (*Hayes*, 340 Ill. App. at 384, 92 N.E.2d at 177.) Plaintiff also alleged that a "supplemental" written statement, containing the same information, was filed in the offices of the secretary and the general attorney in October 1948.

In its answer, the CTA denied that any statement was served within the six-month period and denied that the statement filed in October complied with the terms of section 41.

By way of a prayer contained in an affidavit, plaintiff sought to have the circuit court force the CTA to produce, for her inspection, the February 1948 statement, as well as "a letter or medical report" sent to the CTA at its request by the plaintiff's attending physician. Ultimately, the CTA was ordered to produce the requested documents, refused to do so, and was held in contempt.

On appeal, the appellate court reversed the contempt order, concluding that the plaintiff had not complied with the terms of section 41 regarding notice. The court observed that the letter or medical report of the attending physician could not be considered proper notice because the document was not signed by the plaintiff, her agent, or attorney as required by section 41. (*Hayes*, 340 Ill. App. at 382, 92 N.E.2d at 176.) Nor could the statement procured by the CTA investigator constitute proper notice because plaintiff's affidavit failed to establish that that document was filed in the office of the secretary and also in the office of the general attorney by plaintiff, her agent, or her attorney as required by section 41. (*Hayes*, 340 Ill. App. at 382, 92 N.E.2d at 176.) The court found it irrelevant that the documents were in CTA files and were available to it, as neither fact established compliance with section 41. *Hayes*, 340 Ill. App. at 385-86, 92 N.E.2d at 178.

We agree with the court's analysis in *Hayes* reflecting that, in determining whether the requirements of section 41 have been complied with, the section's terms must be strictly construed. However, here, because of plaintiff's allegations that she served the RTA and that the RTA, in turn, transmitted the notice to the CTA, the analysis is more complicated, involving two issues based on the specific language of the section. We must consider whether plaintiff's service of notice in the office of the RTA secretary and the RTA general attorney can be construed as a filing with the CTA based on the organization and relationship of those two entities. Alternatively, we must consider whether the RTA, in transmitting the notice to the CTA, as alleged, can be said to have acted as plaintiff's agent under the section.

■ The RTA and the CTA were created pursuant to legislative enactment, and the extent of their relationship is governed entirely by the provisions of their separate enabling acts. The RTA was created by the RTA Act as a "single authority" to "provide for, aid, and assist public transportation in the northeastern area of the State" by "providing financial review of the providers of public transportation"

and by "facilitat[ing] public transportation provided by Service Boards." (Ill. Rev. Stat. 1989, ch. 111⅔, par. 701.02(c).) The CTA is included as one of the "Service Boards," as that term is defined in the RTA Act, which are empowered to determine the level and type of transportation necessary for the metropolitan area, as well as the safety standards for that service. (Ill. Rev. Stat. 1989, ch. 111⅔, pars. 309b, 701.03, 702.01, 702.11.) Correspondingly, the CTA was created by the MTA Act to "acquire, construct, own, operate and maintain *** a transportation system in the metropolitan area of Cook County," and was empowered to receive funds for that purpose from the RTA. (Ill. Rev. Stat. 1989, ch. 111⅔, pars. 306, 309a.) Regarding organization, with the exception of the CTA chairman, who serves as a member of the Chicago Transit Board, the governing and administrative body of the CTA, and also as a director of the RTA board, the CTA and the RTA have separate administrative compositions. (Ill. Rev. Stat. 1989, ch. 111⅔, pars. 319, 322, 324, 327, 703.01—10.) In short, after having carefully reviewed the provisions of both acts, we simply find nothing to suggest a relationship between the CTA and RTA which would permit service of notice of suit upon the RTA to satisfy the specific requirement of section 41 that the notice be filed in the office of the Chicago Transit Board and also in the office of the CTA general attorney.

■■ ■ Nor can we conclude transmittal of notice by the RTA to the CTA could be construed as a filing by plaintiff's agent under section 41, even assuming that, by deposing the RTA general attorney, plaintiff could establish the notice was transmitted by the RTA to the appropriate offices of the CTA within the appropriate time. Generally, agency is a legally created, consensual, fiduciary relationship between two persons, by which one person, the principal, has the right to control the conduct of another, the agent. (*Slates v. International House of Pancakes, Inc.* (1980), 90 Ill. App. 3d 716, 413 N.E.2d 457.) Plaintiff's complaint did not allege that such a relationship existed between plaintiff and the RTA and no contention has been raised that the discovery denied plaintiff would establish that fact. Nevertheless, it is clear no consensual, fiduciary relationship existed between plaintiff and the RTA by which it could be determined that the RTA was plaintiff's agent for purposes of compliance with section 41. The fact that the RTA might have taken the initiative to transmit the notice served upon it to the CTA cannot, alone, establish the RTA as plaintiff's agent. Parenthetically, we note that no provision in the MTA Act requires or specifically empowers the RTA to transmit any notice served upon it to any provider of public transportation, including the CTA.

As the court previously recognized in *Hayes*, the burden to comply with the specific filing requirements of section 41 to preserve an action against the CTA is placed squarely upon the person intending to maintain the action. Therefore, because neither the allegations in plaintiff's complaint nor any fact which might be revealed from discovery could establish plaintiff, her agent, or her attorney filed notice in the office of the secretary of the Chicago Transit Board and also in the office of the CTA general attorney as required by section 41, we find no reason to disturb the orders denying plaintiff opportunity to depose the RTA general attorney, and further conclude the action against the CTA was properly dismissed.

Affirmed.

CAMPBELL and BUCKLEY, JJ., concur.